IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| ANTHONY CLINCY,<br><br>　　　　　　Plaintiff,<br>　v.<br><br>TRANSUNION CORPORATION, BILL SAWYER, in his individual capacity, PATRICK NORTON, in his individual capacity, and MARK TEUSS, in his individual capacity,<br><br>　　　　　　Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**<br><br>Case No. 2:14-cv-00398-JNP<br><br>Judge Jill N. Parrish |

　　　　Before the court are motions for summary judgment filed by Trans Union LLC ("Trans Union"), Bill Sawyer, and Patrick Norton. (Docket 22 & 23). The court held oral argument on the motions on November 17, 2015. At the conclusion of the hearing, the court took the motions under advisement. After considering the written submissions and the arguments presented at the hearing, the court issues this Memorandum Decision and Order Granting Defendants' Motions for Summary Judgment.

　　　　As a preliminary matter, the court notes a concern with respect to the briefing on this motion. Defendants, all of whom are represented by the same counsel, filed two separate motions for summary judgment and supporting memoranda. Plaintiff then filed two separate responses to those motions. Defendants then filed two separate replies. The two sets of initial memoranda were virtually identical and were filed on the same day. In fact, it appears that the overwhelming majority of the fact and argument sections were just "copied and pasted" from one memorandum to another. The only difference between the two memoranda was a final section addressing claims specific to only some of the defendants. The same can also be said of both of Plaintiff's

responses and both of Defendants' replies. Indeed, counsel filed well over one hundred pages of briefing, exclusive of exhibits, that are exact duplicates of other filings. The practical effect of such briefing is that the court was forced to cull through the duplicative briefs to see if there were any material differences. In the future, rather than file multiple motions or briefs that are identical, or nearly identical, counsel are instructed to combine them or to incorporate by reference. Large sections should not be "copied and pasted" from one document to another.

## INTRODUCTION

Anthony Clincy brings this action against Trans Union, Bill Sawyer, Patrick Norton, and Mark Teuss. Mr. Clincy, who is African American, claims that his employment was terminated because of his race in violation of 42 U.S.C. § 1981. To support this claim, Mr. Clincy alleges that Trans Union failed to employ its progressive discipline system and that he was treated differently from other similarly situated employees who were white. In addition, Mr. Clincy asserts claims of breach of contract, breach of the implied covenant of good faith and fair dealing, and tortious interference with contractual relations. All of these claims similarly arise from his termination in January 2010.

Defendants Trans Union, Mr. Sawyer, and Mr. Norton have moved for summary judgment arguing that Mr. Clincy's termination was due to a violation of the company's code of ethics and was completely unrelated to his race. Specifically, they argue that Mr. Clincy improperly directed his assistant to change customer codes in order to artificially increase his business unit's revenue, which would result in him receiving higher commissions. Additionally, Defendants argue that that there was no employment contract, and that Mr. Sawyer and Mr. Norton did not interfere with Mr. Clincy's economic relations. For the reasons explained below, Defendants' motions are GRANTED.

## BACKGROUND

The following facts are, unless otherwise noted, undisputed by the parties to these motions and are construed in the light most favorable to Mr. Clincy.

Mr. Clincy is an African American who began working for Trans Union as a sales representative in March 1993. In early 1999, Mr. Clincy was promoted to the position of sales account manager for the Utah Territory. Mr. Clincy subsequently moved to Utah and began working in Trans Union's Salt Lake City office. Mr. Clincy alleges that he was the only African American sales representative in his region. Mr. Sawyer, however, testified that there are at least three other African American salespersons within Trans Union who were employed at the same time as Mr. Clincy.

When Mr. Clincy was hired in 1993, he signed a Salary Compensation Contract with Trans Union. He signed similar contracts each year thereafter. These contracts stated that Mr. Clincy would be paid a base salary and would earn commission based on achieving yearly performance goals. Mr. Clincy's commission was tied to revenue percentage increases over prior years. His final contract was signed in 2009 and provided that 80% of his compensation would be paid in salary and 20% in commission. At that time, he had a base salary of approximately $82,000.

As a sales account manager, Mr. Clincy was responsible for accounts projected to generate annual revenues between $45,000 and $250,000. Accounts below $45,000 were considered low revenue and were serviced by the Client Services Department. Assignments of revenue to the various Trans Union departments were accomplished through the assignment of customer codes. These codes were used to identify customers and the products they used as well as to track revenue. Trans Union maintains that any code change resulting in a transfer of revenue from one department to another was only to be granted if there was no activity on the

3

existing code and if it was approved by various levels within Trans Union's management. But Mr. Clincy disputes that this was actually Trans Union's policy.

In Early 2009, Mr. Clincy originated an account with EnGarde, an alarm system broker. Because this account was not projected to have annual revenues over $45,000, it was transferred to the Client Services department. However, as EnGarde contracted with more companies, the projected revenue grew. Around the summer of 2009, EnGarde contacted Mr. Clincy seeking to obtain special volume pricing. At this time Mr. Clincy expected the revenue to exceed $45,000 and he inquired about changing the client codes for this account.

On December 15, 2009, Mr. Clincy was notified via email that the EnGarde account was owned by the Client Services Department. The email further stated that any change to that client's code would require an agreement by both the Client Services Department and Mr. Clincy's local field unit. Mr. Clincy was instructed that "no action should be taken by the non-owning party until the agreement is reached."

On January 5, 2010, Mr. Clincy contacted Customer Service representative Joanna O'Leary to initiate a request for an additional code for EnGarde. Ms. O'Leary forwarded the request for an additional code to the Customer Support Department, which approved the request. The code was later reviewed by a regional account manager and given final approval by Mr. Sawyer. The creation of this additional code resulted in two separate codes with different prices for EnGarde. The new code had a lower price.

Trans Union alleges that Mr. Clincy requested the additional code in order to circumvent the company's policy regarding code changes. Because the new code had the lower price, Trans Union argues that EnGarde would certainly place orders using the new code. This would, in effect, divert revenue from the Client Services Department into Mr. Clincy's department. The

end result would be increased revenues and commission for Mr. Clincy at the expense of the Client Services Department. Trans Union further maintains that Mr. Clincy understood it would be inappropriate for him to request duplicate customer codes with different pricing without obtaining management approval.

On January 13, 2010, Mr. Sawyer sent an email to Mr. Clincy requiring him to attend a meeting the next day. Mr. Clincy was instructed to bring his computer, phone, and office keys. At that meeting Mr. Clincy met with Mr. Sawyer and Mr. Norton. Mr. Teuss, a Trans Union Human Resources representative, joined over conference call. At this meeting, Mr. Sawyer asserted that Mr. Clincy had deliberately changed two separate EnGarde codes resulting in $40,000 in revenue being redirected to Mr. Clincy's territory. Despite his adamant objections, Mr. Clincy was placed on paid administrative leave while an investigation was conducted.

On January 19, 2010, Mr. Teuss informed Mr. Clincy that he was terminated effective immediately. Mr. Clincy asserts that the code change incident did not provide a legitimate basis for his termination. Rather, he argues he should have received progressive discipline, and was only fired because of his race.

The Trans Union Associate Handbook articulates a system of progressive discipline. However, it also expressly states that Trans Union may, in its sole discretion, "skip any or all of the coaching/counseling steps described herein." Furthermore, corrective action is to "be reviewed and decided based on its individual facts in the context of surrounding circumstances." The Associate Handbook also contains an express disclaimer that it confers no contractual rights or benefits and that it "is not intended to create, or is it to be construed to constitute a contract between Trans Union and anyone." Mr. Clincy denies having received the 2009 Associate

Handbook, although he admits that he regularly received Trans Union's handbooks throughout his career.

## LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (quoting *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013)). On a motion for summary judgment, the court "consider[s] the evidence in the light most favorable to the non-moving party." *Conroy v. Vilsack*, 707 F.3d 1163, 1170 (10th Cir. 2013) (quoting *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011)). However, "[w]hen the moving party has carried its burden, . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quotations and citations omitted).

## ANALYSIS

Mr. Clincy has alleged a cause of action for race discrimination in violation of 42 U.S.C. § 1981 against all defendants. He also alleges claims for breach of contract and breach of the implied covenant of good faith and fair dealing against Trans Union. Finally, he alleges a claim for intentional interference with contractual relations against Mr. Sawyer, Mr. Norton and Mr. Teuss. The court will address each claim in turn.

**I.      Race Discrimination**

Under Tenth Circuit law, where a plaintiff relies on circumstantial evidence to prove a claim for race discrimination, the burden-shifting framework of *McDonnell Douglas Corp. v. Green* applies. 411 U.S. 792 (1973); *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 920 (10th Cir. 2004) (applying the framework). Under that framework "the plaintiff must initially establish a prima facie case of discrimination." *Rivera*, 365 F.3d at 920.

If a "plaintiff establishes a prima facie case, the burden shifts to the employer 'to articulate some legitimate, nondiscriminatory reason' for its action." *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802). "If the employer does so, the burden shifts back to the plaintiff to show that there is a genuine issue of material fact as to whether the employer's proffered reasons are pretextual." *EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007). In this case, for the reasons set forth below, the court finds that Mr. Clincy has failed to establish a prima facie case.

To establish a prima facie case, "a plaintiff must demonstrate: '(1) he was a member of a protected class; (2) he was qualified and satisfactorily performing his job; and (3) he was terminated under circumstances giving rise to an inference of discrimination." *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012) (quoting *Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004)). The plaintiff has the burden of establishing a prima facie case "by a preponderance of the evidence." *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005).

Trans Union argues that Mr. Clincy has failed to carry his burden of establishing a prima facie claim of race discrimination. Specifically, it contends that Mr. Clincy has not established that the circumstances surrounding his termination give rise to an inference of discrimination. To support this contention, Trans Union asserts that Mr. Clincy has not "establish[ed] that he was treated any differently than similarly situated employees of a different race." It also points to the

lack of any evidence suggesting an "animus in the timing or sequence of events leading up to Clincy's termination."

As noted above, Mr. Clincy filed two separate, but essentially identical, memoranda responding to Defendants' two motions for summary judgment. Both contain a section responding to Trans Union's claim that Mr. Clincy has failed to establish a prima facie case of race discrimination. The sections are identical and consist of only two sentences. They read, in their entirety:

> [Trans Union] admits that [Mr.] Clincy, as an African American, is a member of a protected class. Def. Fact 1; dock. no. 22 at 22. [Trans Union] admits that [Mr.] Clincy suffered an adverse employment action when [Trans Union] terminated him on January 19, 2010. Def. Fact 5; dock. no. 22 at 22.

The next section in both of Mr. Clincy's almost identical memoranda addresses the second step of the *McDonnell Douglas* burden-shifting framework, arguing that Trans Union has not articulated a legitimate, nondiscriminatory reason for Mr. Clincy's termination.

The glaring deficiency in both of Mr. Clincy's memoranda is the lack of any attempt to argue that he has satisfied the second and third elements required to establish a prima facie claim of racial discrimination. To do so, Mr. Clincy has the burden of coming forward with evidence that he was satisfactorily performing his job and that "he was terminated under circumstances giving rise to an inference of discrimination." *Salguero*, 366 F.3d at 1175. But his memoranda advance no argument and cite to no authority that meet this requirement. This inadequacy in the briefing is a direct violation of the local rules and the Federal Rules of Civil Procedure, both of which require a party to advance arguments in support of its position. *See* DUCivR 7-1, 56-1; Fed. R. Civ. P. 56. Accordingly, for that reason alone, the court may grant the defendants' motions for summary judgment on this claim.

Even were the court to ignore the inadequacy of the briefing and consider arguments Mr. Clincy *could* have made based on the facts presented in the memoranda, he would still have failed to establish a prima facie case. Specifically, he has not demonstrated sufficient facts that "he was terminated under circumstances giving rise to an inference of discrimination."[1] *Salguero*, 366 F.3d at 1175. The only facts that have any connection whatsoever to race are: 1) the apparent lack of diversity among Trans Union's sales force, and 2) Trans Union's failure to discipline the white employees who were involved in changing the codes. But neither of these facts gives rise to an inference of discrimination in this case.

The court first turns to Mr. Clincy's allegation that Trans Union has few, if any, African American salespeople. Under Tenth Circuit law, that fact alone does not give rise to an inference of discrimination. The Tenth Circuit has recognized that in individual disparate treatment cases, "the focus is on how and why an employer treated a particular individual the way it did . . . [thus] statistical evidence of the employer's general hiring patterns is considerably less probative" than for disparate impact cases. *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1319 (10th Cir. 1999) *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). And in this case, Mr. Clincy has provided no evidence or analysis linking Trans Union's overall employment practices with the decision to terminate his employment.

In addition to the absence of any causal link between Trans Union's general hiring practices and Mr. Clincy's termination, Mr. Clincy has not provided the court with any actual statistical evidence. The only evidence he identifies is his own testimony that he does not know of any other African American sales associates. But Mr. Clincy's testimony establishes neither how many sales associates Trans Union employs nor how many of those Mr. Clincy knows. His

---

[1] Mr. Clincy also failed to sufficiently brief the required element that he was satisfactorily performing his job. However, it appears that Mr. Clincy *could* have demonstrated a sufficient showing for that element based on the facts presented in the memoranda.

anecdotal testimony fails to provide the court with even a raw percentage of African Americans employed by Trans Union. And even a raw percentage would, by itself, be insufficient. That percentage would need to be considered in comparison to the underlying demographics of the relevant populations. Moreover, "to be reliable, the result must be statistically significant." *Tabor*, 703 F.3d at 1223. All of this requires expertise in statistics. It is therefore unsurprising that, to be reliable, statistical evidence generally must be introduced by an expert in statistics. Because Mr. Clincy failed to provide the court with any actual statistical evidence in this case, the evidence on which he relies regarding the alleged lack of diversity among Trans Union's salespeople does not support the conclusion that Mr. Clincy "was terminated under circumstances giving rise to an inference of discrimination." *Salguero*, 366 F.3d at 1175.

The court next turns to Mr. Clincy's evidence that Trans Union did not discipline any of the other employees involved in changing the codes. While the court agrees that disparate treatment of similarly situated individuals would be evidence of discrimination, there is simply no evidence that any disparate treatment occurred in Mr. Clincy's case.

It is true that Trans Union did not discipline the employee who actually entered the code changes in the computer system or the supervisor who approved Mr. Clincy's request. These employees, however, are not similarly situated to Mr. Clincy. It was Mr. Clincy, not these other employees, who requested that the codes be changed. And it was Mr. Clincy, not these other employees, who stood to reap a financial benefit from the changes. Indeed, there is no evidence suggesting that any other employee had potential for financial gain from the changes. The fact that the supervisor approved Mr. Clincy's requests and did not immediately identify them as problematic may be evidence of negligence or incompetence. It is not, however, evidence of dishonesty or an intentional effort to misdirect revenue. Accordingly, this "misconduct could

reasonably be viewed as less serious than the dishonesty [allegedly] displayed by [Mr. Clincy]" and does not provide evidence of discrimination. *Rivera*, 365 F.3d at 924. Likewise, Mr. Clincy is not similarly situated to his assistant who actually entered the code change. Indeed Mr. Clincy held a management position and had authority over the assitant. Additionally, the assistant was acting on Mr. Clincy's direction. Because they are not similarly situated, the different treatment they received does not provide evidence of discrimination.

In short, Mr. Clincy has failed to adequately respond to Trans Union's argument that he failed to establish a prima facie claim of race discrimination. And none of the facts presented give rise to an inference of racial discrimination. Because Mr. Clincy failed to establish a prima facie claim of race discrimination, Defendants are entitled to summary judgment on Mr. Clincy's claim of race discrimination under 42 U.S.C. § 1981.

## II. Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing

"The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *Bair v. Axiom Design, LLC*, 20 P.3d 388, 392 (Utah 2001). In Utah, an employment relationship is presumed to be at-will. *Giusti v. Sterling Wentworth Corp.*, 201 P.3d 966, 976 (Utah 2009). When an employer intends to guarantee employment for a specified period, the employer must "make that promise clear and definite" by a manifestation "communicated to the employee and sufficiently definite to operate as a contract provision." *Id.* (quoting *Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997, 1002 (Utah 1991). "[W]hen an employee handbook contains a clear and conspicuous disclaimer of contractual liability, any other agreement terms must be construed in light of the disclaimer." *Hodgson v. Bunzl Utah, Inc.*, 844 P.2d 331, 334 (Utah 1992).

Mr. Clincy argues that the "basis for his breach of contract claim is that [Trans Union] failed to apply its progressive discipline process to his termination."[2] While Mr. Clincy claims that he received general training on the Trans Union's progressive discipline policy, he has not presented the court with any specific oral statements made by Trans Union about the policy. Indeed, the only evidence before the court detailing Trans Union's policy is the 2009 Associate Handbook.

The express language of Trans Union's 2009 Associate Handbook states that "any change in an associates' at-will status may occur only with the written authorization of the President of Trans Union." Similarly, the annual commission plans Mr. Clincy received in 2007 and 2008 stated that the plans "shall not in any way be construed or considered as a contract for employment." In response, Mr. Clincy claims that he never received the 2009 Associate Handbook. But he cannot rely on the progressive discipline program described in the Associate Handbook as the basis for an implied contract while simultaneously disavowing the express disclaimers included in the program. As a result, the court concludes that Trans Union's express disclaimer of any employment contract forecloses the possibility that the Handbook created an employment contract between Trans Union and Mr. Clincy.

The court next turns to Mr. Clincy's claim for breach of the implied covenant of good faith and fair dealing. "[T]o find a breach of the duty of good faith and fair dealing, there must be some type of preexisting contractual relationship." *Andreini v. Hultgren*, 860 P.2d 916, 921 (Utah 1993). Because there was no valid employment contract between Trans Union and Mr. Clincy, Trans Union could not have breached the covenant of good faith and fair dealing. Accordingly

---

[2] Mr. Clincy expressly denies that his breach of contract claim is based on his yearly commission plans.

the defendants are entitled to summary judgment on the claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

### III. Tortious Interference

Mr. Clincy's fourth cause of action, asserted against Mr. Sawyer, Mr. Norton and Mr. Teuss, is one for tortious interference. The complaint explains that basis for this claim is that these defendants allegedly tortiously interfered "with [Mr.] Clincy's existing and prospective employment contracts with Trans Union." However, as explained above, there was no contractual relationship between Mr. Clincy and Trans Union. Therefore, it is impossible for these individual defendants to have tortiously interfered with such a contractual relationship and Mr. Clincy's claim fails as a matter of law.

### CONCLUSION

Mr. Clincy has failed establish a prima facie case of race discrimination. Likewise, he has failed to demonstrate that there are disputed material facts as to whether he had an employment contract with Trans Union. All of Mr. Clincy's claims fail as a matter of law and the court therefore GRANTS Defendants' motions for summary judgment.

Dated this 8th day of January, 2016.

BY THE COURT:

_____
Judge Jill N. Parrish
United States District Court